May it please the Court, Mr. Johnson, on behalf of Appellant Erskine Carter, I do my best to reserve a minute or two for rebuttal. In this case, the District Court applied the First Degree Murder Guidelines at Mr. Carter's sentencing, which more than doubled his guideline exposure that would have otherwise applied. And it did so at best by relying on the uncorroborated statements of an unidentified informant, and at worst, by the Court's own characterization, relied on quote-unquote presumptions by another district judge who had presided over Mr. Carter's case earlier and the cases of several other defendants. Neither the unreliable uncorroborated statements nor presumptions in this case would satisfy the clear and convincing standard that is required to more than double his guidelines. Maybe we could just start out by parsing this aspect. Your client obviously disputed that he had any personal involvement in the shooting that took the life of, was it W.S.? W.S. But, and maybe you're right. Maybe if the judge were required to find that your client personally participated in that killing, maybe it wouldn't be appropriate to rely solely on this. I take it you know who the cooperator is because the person testified. You know, I was not the attorney below. I was appointed on appeal. Okay. So I do not, I know a lot about what happened. I know that that cooperator, I don't want to cut off your question. I'm just, I mean that person did testify in the other trial, so people know who he or she is, right? Okay, but anyway, but if the judge did not have to find that your client personally participated, but rather just that this murder occurred as a result of a conspiracy to which he pleaded guilty, it seems to me it's kind of irrelevant. The point that you just stressed just falls away. Do you know what I'm trying to get at? Absolutely, the government's trying to get you there as quick as they can to avoid all the problems that otherwise would apply. But what, and I challenged the government in the opening brief. I said, what authority can they cite that it's simply if a murder occurs within a Broadway crip killing somebody, how can any murder, I mean they could have added anyone to this lengthy indictment. They could have put JFK in there and said a crip killed him. And the question is, is what did Mr. Carter plead to? He didn't plead to a conspiracy that he participated in, that he agreed to participate in with 610 overt acts. He pleaded guilty, I thought, to racketeering conspiracy, in which one of the racketeering acts was conspiracy to commit murder in furtherance of the gang's activities. And it seems like what the guideline required was that the murder resulted in, the conspiracy resulted in the death of this person. That seems pretty clear. No conspiracy is what caused the death, maybe not your client personally, right? Well, I mean, first we can look at the indictment. What specifically was Mr. Carter alleged to have done? One of the overt acts, the one concerning violence, ER 286, paragraph 10, Carter, among a lengthy list of others, used violence against the gang's rivals and enemies by engaging in, the government didn't even allege actual completed murders in the indictment. We can look at the plea agreement, ER 250. What did the parties agree that he conspired to do? What was the basis for his plea? Well, it's that he conspired and agreed with other Broadway crips. The government immediately jumps in and says dozens of others. That's not what he agreed to. It's a disputed fact about who he actually agreed with. I mean, it would be more than one, but certainly not dozens, and not the people who were involved in the WS murder or other murders. ER 250, it says that he conspired, agreed with Broadway crips members that a conspirator would commit at least two racketeering acts, one of which is conspiracy to commit murder. So your client admits that that was part of what he agreed to participate in. Are you then saying that the murder of WS was involved in the indictment as the result of some other disconnected conspiracy? Because it seems like it lines up quite closely with what your client admitted to. Well, I guess it's the government's burden here, by clearing convincing evidence to show what he agreed to, what conspiracy to commit murder he agreed to. And the guidelines say absent some evidence, some proof, and this court has said by clearing convincing evidence that there is some connection between what he agreed to that others would do and what the government would ask this court to say that he has encompassed in his conspiracy. There's nothing there. It's that he agreed with others. Well, who? The government has the burden to say which others he agreed with to commit murder. And the guidelines say if you can't take the facts and establish that he agreed with others to commit this murder or other murders. I mean, they cite a 1987 murder in here when my client was 12 years old. But to take the government's theory, he would be responsible for any or all of these. And what I only, I mean, as I read the transcript of the sentencing, the only murder that, because the difference is whether a murder was actually committed. There was a conspiracy to commit murder, and then the guideline changes depending on whether a murder actually occurred pursuant to the conspiracy. The only thing that the district court found was the murder of W.S. did not rest this calculation on any murder other than W.S. Am I reading that right? Yes, Your Honor, and that's where I started to try to find what these presumptions were that would cause him to think that Mr. Carter, in his conspiracy, in his agreement with at least one other, probably Crip, agreed to, for that person to commit murder. Did we know whether or not, or would it matter whether or not the district court found that Carter was personally involved in the murder of W.S. or merely that the murder of W.S. was pursuant to the conspiracy that he had joined? Well, no, he doesn't have to be a participant. To go back to Judge Wofford's original question, but the government would have to produce some evidence that he had an agreement with at least one of these other individuals, you know, whether it's Joshua Perez or whether it's Rayvon Murley. I don't know if that's the test. Isn't the test that he was involved in and agreed to participate in the RICO conspiracy and that it was foreseeable that the RICO conspirators may have, to him, may have committed a murder to carry out the goals of the RICO, the racketeering enterprise, basically? Well, the government suggests, Judge Murphy, that you should go down this path of Pinkerton liability or foreseeability. But, again, when we have to have clear and convincing evidence and they have to meet that burden, where did they show it was reasonably foreseeable to Erskine Carter that one of these individuals would actually go commit this offense? I mean, even that he agreed with one of these individuals in the W.S. murder, you need to go kill somebody, and they killed W.S. Like, maybe, maybe, but we don't have any of that. And I think that's why they jumped to where Judge Wofford took me. Well, you know, there were murders. So let's just say he played to a full conspiracy. Correct me if I'm wrong. They have it, but they have it from an unnamed, as you suggest, unreliable informant, right? That's the crux. Yeah, at best. And the government cites this court's decision in Barry to say, well, there was external consistency. So you can just believe what this court has said, that alone, statements to law enforcement are unreliable. Certainly when you have a cooperating informant who apparently has some benefit from testifying, it would be even more so, but simply statements to law enforcement, unreliable, inherently unreliable. They say, well, you know, he said things about other defendants that other judges found. Well, the question is for inherent reliability. In Barry, the court said, well, more than one person said that Barry was the leader of this criminal organization. So we have, well, each one on his own might be someone who told law enforcement or the prosecutor this, that, or the other. The fact that multiple people are saying it has external consistency. The government then cites Alabama v. White, and they said, well, in that case, the informant was deemed reliable because he predicted something that the defendant would do. In this case, the informant only told law enforcement what happened after the fact, so we don't have that either. I think the government cites a case called Cantrell that, in that case, the district judge, concerned about the implications of what the informant said, actually took testimony, heard cross-examination, and made an independent credibility determination, that judge who sentenced Cantrell, and also found that Cantrell had been involved, or the defendant, I think there were multiple defendants in that case, had been, there was sufficient evidence of her participation in the conspiracy beyond just what that person said. We don't have any of that here. I'm running out of time, but. Yeah, I'm sure you've got time for a couple. Why don't we hear from the government next? Thank you. There's the court. David Williams for the United States. I think it's remarkable to say that the informant's statements were uncorroborated. I think that virtually everything the confidential witness said that could have been corroborated was corroborated. Yes, but, you know, if we're talking about whether this defendant participated as part of that group that killed W.S., there's no cooperation for that. If that were the key fact, I think you'd have to admit that was uncorroborated. The link to the defendant, I don't actually think that that's necessarily uncorroborated. So I think the question of reliability is not, was every fact correlated? The question is, was the statement reliable? And in this case, the witness gave all of this information to law enforcement before any guns were recovered, told law enforcement who was involved, and everything that they said before law enforcement had ever investigated was borne out. This witness told law enforcement about the May 6th shooting, and lo and behold, told them several days later that it was connected to the subsequent shooting. That was borne out. This witness said that defendant used a .40-caliber Glock. A .40-caliber Glock was found. It was the only .40-caliber. There were two .40-caliber weapons. One of them was subsequently found in Perez's car. And consistent with the witness's statement, Perez used a .40-caliber. That .40-caliber was found in Perez's car. A .40-caliber Glock that was not specifically linked in the FBI's recovery of the weapon was the .40-caliber Glock that the witness said defendant used. And so what I would say is not everything that the witness said was corroborated because it's never possible to corroborate everything a witness says, but everything that could have been corroborated was. And the question here is not do we have a direct link for everything. The question is was this witness reliable. And when you look at a case like Alabama v. White, where you have the prediction of they're going to be in this place at this time, I would say this is very similar to that. The witness says these were the weapons used. Go look for them. And then, lo and behold, that's where they are. It's a similar predictive ability. It's not providing confirmation bias to say law enforcement, you have it, and I agree that's what happened. It's predicting where the information will be found. Let's assume that we were not persuaded that the informant was reliable as to this defendant's personal participation. You have this backup theory, and you heard the text. He says there's no evidence that tried to murder W.S. to the conspiracy that this defendant agreed that he engaged in. Right. And since the first argument in this case is a rule of third degree argument, I would start with the simple proposition that in the district court it was undisputed that the murder conspiracy involved in this case led to W.S.'s murder. The government made this point in its sentencing papers, and it was never opposed. In fact, at sentencing, defense counsel essentially agreed that that's what had happened, that other members of the conspiracy, Murley and Perez and Piggy, had conspired in connection with this case to kill W.S. That was undisputed in the district court, and I don't think that even now I'm not sure that defense counsel is disagreeing that the murder of W.S. was unconnected to the Broadway Crips murder conspiracy. I mean, Mr. Carter admitted that he conspired to commit murder, and in the course of that, I think it is in this discussion of Pinkerton, it is certainly reasonably foreseeable when you conspire to commit murder that a murder will occur, and we're not trying to tag every single murder since the dawn of time. The murder of JFK is not part of the Broadway Crips murder conspiracy, but the murder conspiracy in this case, the same murder conspiracy the defendant admitted to, is the murder conspiracy that led to W.S.'s death, and I think that's the connection. It's not any murder, however unforeseeable, if some member of the conspiracy had gone off and committed an unrelated murder for personal reasons. We aren't saying that that's part of the murder conspiracy, but in this case, the conspiracy that he admitted to included conspiracy to commit murder in the context of retaliation and attacks on perceived enemies, and that's what the murder of W.S. was. It was an attempt at retaliation and an attempt at attack on members of ECC. So when the district court said that in this particular situation there was the murder of W.S. to which the defendant has been connected, I think, sufficiently, can we tell from that what theory the district court was relying on? Was the district court relying on the theory that W.S. was involved personally in the actual murder or a Pinkerton-type theory? I think that the district court was making both findings. Earlier, the district court adopts the government sentencing calculation, and when you read the government sentencing briefs, the primary argument that the government made was that separate point. But let's assume that the calculation being proffered by the government is technically correct and then makes this cryptic comment. But, you know, a lot potentially rides on what this is resting on, and I'm just wondering whether we have enough articulation of what the district court was thinking. I think that we do. I think that in the context of Rule 32 decisions, if you look at the prior cases, you do not need a lengthy, detailed explanation for what the ruling is. What you need is a ruling. It's in the nature of an evidentiary ruling. You need a decision to be made so that people know what decision is being made and that it can then be incorporated as part of the final outcome. You do not need an explanation for why. So specifically in the Rule 32 context, I don't think that anything more is required. But to the extent we're drilling down on that, I think that the district court made both findings if Mr. Carter was involved. I think that because the briefing and because the argument that ensued, I think it was dozens of pages of argument in this case over this whole issue, I think that the district court is finding that Mr. Carter was involved. The district court is also finding, as it was undisputed, that other members of the conspiracy are involved. And I think in examining the, I would describe it as perhaps reluctant language, that the calculation is technically correct. The end result in this case is a significantly below guideline sentence. What would have been the range had the district court not used Level 43 and used Level 33? I'm not exactly certain, but I think it would have been. I don't have, normally I've described it. Just try to get a sense of the big drop. I understand. It's a significant drop between 43 and 33. 151 to 188, that's my friend over there informs me. That's Level 33 with this gentleman's criminal history? I think that's correct, yes. Because his criminal history, as described in the brief, says not. What was the range in which he would have been sentenced had the probation department's overall guideline calculation been accepted? You said 200 months was a significant below. So at 43, I believe it was 360 to life. The probation office said 30. The probation office said 33, yes. I will note the probation office, the government gave a lengthy objection to probation's initial calculation. The probation's response really didn't address any of those arguments. It didn't address this question of other members of the conspiracy. So the district court is grappling with that in part at this subsequent hearing, as well as with the maximum he could have received is 240. The maximum would have been life. It's a Level 43 offense charges that he can't give details. I'm sorry, 60 years because there's a statutory maximum. I think the statutory maximum would have been 60 years. The range would have been life. I'm beginning to run low on time, and so I would just remind the court of in a case like this, we are dealing with plain error on the Rule 32 issue. We are dealing with minimal indicia of reliability on the reliance on CW1 statements, and we are dealing with a situation where the role of other members of the murder conspiracy, people who ultimately pled guilty, who defendant in his brief acknowledges participated in this murder, and we have a situation where the conspiracy that he pled guilty to led to this murder. Unless there are questions. Okay, thank you. Thank you very much. Let's look to some of the folks for a moment. Thank you for the extra time. With regard to one thing, overmaniacry, a legal finding is not the realm of Rule 32, a factual finding is. So when the district court says, I technically find that these guidelines sufficiently apply to Mr. Carter's, I don't even know if he said involvement. I could pull up the quote. Judge Collins, I think your attempt to understand what he's saying is critical to Rule 32. I mean, we have cited a bunch of cases competing about what it means, but in the end, the Doe case that I cite, cites back to Cardi, which cites Tarita, and says when it's a non-frivolous situation, ordinarily a district court will tell you why. We'll tell you why. And we don't have that here. And we should remain at a minimum to find out why. Because the government wants to tell you, believe me, he pled to the conspiracy that included this murder. I asked where, what is the evidence they presented below, that he had any connection with these individuals for his particular plea. I don't see any. But what we do have is the informant. And what I think is interesting is, Judge Wofford, you asked me earlier about him testifying. Well, we know one thing about this informant. When he testified in the trial of Martise Shaw, 12 jurors unanimously acquitted Mr. Shaw of the RICO conviction. Twelve jurors necessarily found him to not be credible. And what's interesting about Mr. Shaw as compared to Mr. Carter is that, like Mr. Carter, the only piece they had from the confidential informant is that Shaw was there. The allegation was that he was the driver of the car involved in the W.S. murder. And what did a jury of 12 say when they heard that testimony? Not enough. Insufficient. I know we're clearly convincing versus reasonable doubt. But the government still is not pointing to a single thing that would even get us to a preponderance that Mr. Carter was involved in this particular offense. Can I ask you, as you stressed the point about the jury's verdict, but Judge Otero apparently found this cooperator one of the most compelling or believable witnesses in the history of cooperators. Are we supposed to, was Judge Wu in this case, was he entitled to put any weight on that? Well, let me take it two steps. Judge Otero is one out of 13. I'm going to argue that is not clear and convincing evidence for Judge Wu. But more importantly, and the concern that I have in race under Rule 32 and certainly due process, is that Judge Wu didn't have any opportunity to assess the credibility of this witness. This isn't a case where he had anything other than what the government was telling him Judge Otero said. And I get that, but it's very troubling when you have a case where, and I think I'm correct about that 151 to 188, but whatever it is, a significant jump in exposure before the court considers what the government even agreed, that Mr. Carter had equities that would lead to a below-guideline sentence. And we know that a remand would be necessary simply if there was a miscalculation of guidelines so that a judge could consider that starting point before considering any other equities, which even the government agreed there was something. Okay. Thank you very much for your argument. The case is just argued and submitted.
judges: WATFORD, COLLINS, Murphy